UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH


STEVEN BOULTON
    Plaintiff

v.                                                                          No. 5:07CV-00088-J

MICHAEL ASTRUE
    Commissioner of Social Security
    Defendant


**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Donna Thornton-Green. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 13 and 16, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on January 23, 2006, by administrative law judge (ALJ) Randolph Schum. In support of his decision denying Title II and Title XVI benefits, Judge Schum entered the following numbered findings:

    1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

    2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

    3. The claimant's peripheral artery disease, is a "severe" impairment, based upon the requirements in the Regulations (20 CFR §§ 404.1520 and 416.920).

    4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant retains the residual functional capacity to perform medium work. The record supports he can lift and carry 50 pounds occasionally and 25 pounds frequently. He can sit, stand and walk (each activity) for six hours in an eight-hour day.

7. The claimant's past relevant work as a poultry farmer did not require the performance of work-related activities precluded by his residual functional capacity (20 CFR §§ 404.1565 and 416.965).

8. The claimant's medically determinable peripheral artery disease does not prevent the claimant from performing his past relevant work.

9. The claimant was not under a "disability" as defined in the Social Security Act at any time through the date of the decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Administrative Record (AR), pp. 21-22).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a

whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

    2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act. To qualify for supplemental security income (SSI) benefits, a claimant must file a Title XVI application, must have insufficient earnings and other financial resources, and must be under a disability as defined by the Act. The determination of disability is essentially the same for Title II and Title XVI purposes.

    3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking.

3

20 C.F.R. §§ 404.1521 and 416.921. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1509 and 416.909.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a <u>prima facie</u> showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). If the evidence supports a finding that the claimant's age, education, work experience, and residual functional capacity (used to determine the claimant's maximum sustained work capability for sedentary, light, medium, heavy or very heavy work as defined by 20 C.F.R. §§ 404.1567 and 416.967) coincide with <u>all</u> the criteria of a particular rule of Appendix 2

of Subpart P, the Commissioner must decide whether the claimant is disabled in accordance with that rule. Section 200.00(a) of Appendix 2; 20 C.F.R. §§ 404.1569a(b) and 416.969a(b).

If the claimant is found to have, in addition to the exertional impairments resulting in his maximum residual strength capabilities, nonexertional limitations, e.g., mental, sensory, or skin impairments, postural or manipulative limitations, and environmental restrictions; the Commissioner may rely on the particular rule only as a "framework for decisionmaking." Section 200.00(e)(1) and (2) of Appendix 2; 20 C.F.R. §§ 404.1569a(d) and 416.969a(d); *Kimbrough v. Secretary*, 801 F.2d 794 (6th Cir., 1986). Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

### The ALJ's Finding That the Plaintiff Retains the Ability to Perform "Medium" Work

The plaintiff was born on August 14, 1945. Therefore, at the time of the ALJ's decision on January 23, 2006, he was 60 years old, or closely approaching retirement age, as contemplated by 20 C.F.R. §§ 404.1563(e) and 416.963(e).

In or around January of 2001, the plaintiff was found to have a cancerous tumor in the right anterior floor of the mouth. John McCracken, M.D., performed a full mouth dental extraction. In June of 2002, the plaintiff was found to have a metastatic squamous cell carcinoma in the left submandibular area. Dr. McCracken performed a left modified neck dissection. In October of 2002, Dr. McCracken noted that there was no evidence of recurrent carcinoma.

After the apparently successful excision of his cancers, in January of 2004, the plaintiff was found to have bilateral critical stenosis of the internal carotids. In February of 2004, vascular surgeon Michael Jones performed a left carotid endarterectomy. In March of 2004, the same procedure was performed on the right side. In January of 2005, the plaintiff developed recurrent mild stenosis on the left side that was found to be amenable to treatment with Plavix and did not require further surgical intervention.

At the hearing on August 30, 2005, the plaintiff testified that "Dr. McCracken told me before the [left neck] surgery [in or around June of 2002] that he'd be cutting a nerve ... that runs down my [left] shoulder and it would be a constant pain, discomfort ... but he had to cut that nerve to do his surgery" (AR, p. 287). The plaintiff's testimony is consistent with Dr. McCracken's notations that state that "[t]he potential risk factors including left shoulder weakness ... were discussed" (AR, p. 168). The plaintiff testified that Dr. McCracken advised him, due to the residual nerve damage, to refrain from lifting/carrying more than ten pounds (AR, p. 283). Dr. McCracken's notes reflect ongoing post-surgical treatment for left arm pain, including prescription of Lortab (AR, pp. 179-188). The plaintiff further explained that he is left-handed, that his neck/shoulder condition affects his ability to perfrom basic work activities such as driving a nail, and affects his ability to move his neck, reach overhead, and stand/walk for prolonged periods of time (AR, pp. 288-289).

The ALJ found that the plaintiff has the physical residual functional capacity (RFC) to perform "medium" work. ALJ's Finding No. 5. "Medium" work contemplates, among other things, an ability to engage in substantial physical activities, including lifting/carrying 50 pounds occasionally and 25 pounds frequently and standing/walking for at least six hours during an

eight-hour work day. See 20 C.F.R. § 404.1567(c) and Social Security Ruling (SSR) 83-10. "Occasional" is a term of art in Social Security disability law that means occurring from "very little up to one-third" of the workday. SSR 96-9p.

The plaintiff argues that "the Administrative Law Judge had no substantial basis for his finding that the plaintiff could perform medium work" (Docket Entry No. 13, p. 8). The magistrate judge has searched the administrative record and has located no finding by any treating, examining, or non-examining physician with respect to the critical issue of what the plaintiff can still do despite his physical impairments as a whole, including the residual effects of cancer surgeries, nerve damage affecting the left upper extremity due to neck surgery, and carotid artery stenosis. Furthermore, the Commissioner has not cited to the court any such medical findings or evidence. Accordingly, the ALJ's RFC Finding No. 6 for "medium" work appears to have been based upon no medical source opinion. The undersigned concludes that the ALJ's finding lacks substantial support in the administrative record because an ALJ is deemed to be unqualified to "interpret raw medical data in functional terms." *Nguyen v. Secretary*, 172 F.3d 31, 35 (1st Cir., 1999).

Furthermore, this case was denied at the fourth step of the sequential evaluation process based upon a hypothetical question to a vocational expert that contemplated an ability to perform at least "medium" work. However, a "hypothetical question is correct [only] if at least one doctor substantiates the information contained therein." *Godwin v. Secretary*, 1995 WL 871199 (E.D.Mich.). As indicated above, no doctor opined that the plaintiff can perform "medium" work. The ALJ's finding that the plaintiff can perform "medium" work appears to have been based solely upon the ALJ's own lay medical opinion.

7

Next, the plaintiff contends that "the Administrative Law Judge did not have substantial evidence to find the plaintiff's testimony to be not credible" (Docket Entry No. 13, p. 7). The magistrate judge has examined the ALJ's written decision and finds no indication of why the ALJ implicitly rejected the plaintiff's testimony that Dr. McCracken limited him to lifting no more than ten pounds due to permanent nerve damage affecting the left upper extremity. Therefore, the ALJ's decision is inadequate to permit a meaningful judicial review of the relevant credibility issues.

Accordingly, we shall recommend that this matter be remanded to the Commissioner for a new decision and for an explicit evaluation of the credibility of the plaintiff's testimony that his treating surgeon, Dr. McCracken, limited him to lifting no more than ten pounds due to a severed nerve affecting the dominant left, upper extremity. The new decision should reflect a fresh evaluation of the plaintiff's physical RFC based upon the medical evidence as a whole, including the residual effects of cancer surgery, nerve damage affecting the left upper extremity, and carotid artery stenosis as well as an RFC finding that is based, in part, upon the opinion of at least one medical source with respect to what the plaintiff can still do despite his impairments.

### Listing § 13.02(D)

Next, the plaintiff argues that "the Administrative Law Judge erred by not finding the plaintiff met the Listings" (Docket Entry No. 13, p. 4). If a claimant shows that he suffers from an impairment that meets or equals the medical criteria of an impairment listed in Appendix 1 of the regulations (the so-called Listing of impairments), there is a conclusive presumption of disability. Because a finding of disability under the Listing is made independently of all vocational factors, the medical requirements of the Listing are strictly construed upon judicial review and each criterion must be shown to be satisfied precisely.

> Listing 13.02 lists the following adult cancers of the head and neck:
>
> 13.02 Soft tissue tumors of the head and neck (except salivary glands--13.08-- and thyroid gland--13.09).
>
> A. Inoperable or unresectable.
> OR
> B. Persistent disease following initial multimodal antineoplastic therapy.
> OR
> C. Recurrent disease following initial antineoplastic therapy, except local vocal cord recurrence.
> OR
> D. With metastases beyond the regional lymph nodes.
> OR
> E. Soft tissue tumors of the head and neck not addressed in A-D, with multimodal antineoplastic therapy. Consider under a disability until at least 18 months from the date of diagnosis. Thereafter, evaluate any residual impairment(s) under the criteria for the affected body system.

The plaintiff argues that his impairment satisfies Listing § 13.02(D), which requires the presence of "metastases beyond the regional lymph nodes." According to the National Cancer Institute's dictionary of cancer terms (www.cancernet.nci.nih.gov):

> Metastasis [is the] spread of cancer from one part of the body to another. A tumor formed by cells that have spread is called a "metastatic tumor" or a "metastasis." The metastatic tumor contains cells that are like those in the original (primary) tumor. The plural form of metastasis is metastases.
> ...
> [A] regional lymph node [is] a lymph node that drains lymph from the region around a tumor.

Therefore, to satisfy the Listing, the plaintiff must show the presence of a metastatic tumor in an area of the body that is "beyond," or not part of, the lympthatic drainage system of the original, or primary, tumor. In this case, the original, or primary, tumor was in the floor of the mouth and the metastatic tumor was in the submandibular area.

9

The plaintiff has the burden of proof at the third step of the sequential evaluation process to show that his conditions satisfies the medical criteria of the Listing. The magistrate judge concludes that the plaintiff has failed to show that the submandibular area is "beyond" the lympathic drainage system of the floor of the mouth. According to an article on "Malignant Tumors of the Floor of the Mouth" (www.emedicine.com), "[t]he primary lymphatic drainage of the mouth floor filters through the submandibular and submental lymph nodes (level I) and upper anterior cervical (jugulodigastric) node groups (level II)." Therefore, the relevant anatomy and physiology apparently is such that the submandibular area is within and not "beyond the regional lymph nodes" that includes the floor of the mouth. Therefore, the plaintiff has failed to show that his condition satisfies Listing § 13.02(D).

The plaintiff's final contention is that "the Administrative Law Judge did not consider whether the plaintiff was entitled to a closed period of disability" (Docket Entry No. 13, p. 7). The argument apparently is premised upon a false assumption that the evidence reflects that his condition satisfied the Listing for at least some period of time.

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter be REMANDED to the Commissioner for a new decision; for an explicit evaluation of the credibility of the plaintiff's testimony that his treating surgeon, Dr. McCracken, limited him to lifting no more than ten pounds due to a severed nerve affecting the dominant left, upper extremity; for a fresh evaluation of the plaintiff's physical RFC based upon the medical evidence as a whole, including the residual effects of cancer surgery, nerve damage affecting the left upper extremity, and carotid artery stenosis; and for an RFC finding that is based, in part, upon the opinion of at least one medical source with respect to what the plaintiff can still do despite his impairments.

**NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), any party shall have a period of ten (10) days, excluding intervening Saturdays, Sundays, and/or legal holidays pursuant to Fed.R.Civ.P. 6(a), from the date of notice of electronic filing within which to file written objections to the foregoing report with the Clerk of the Court. Further and pursuant to Fed.R.Civ.P. 72(b), any party may file a response to objections filed by another party within ten (10) days, excluding Saturdays, Sundays, and/or intervening legal holidays, after being served with a copy of said objections. A period of three days shall be added to each ten (10) day period above pursuant to Fed.R.Civ.P. 6(e).

The court shall not conduct a de novo review of objections that are general, conclusory, or merely adopt previous pleadings. The original objections shall be sent to the Clerk of Court either electronically or by mail. A copy of any objections and response thereto shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001 or via e-mail to w_david_king@kywd.uscourts.gov. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140 (1985).